# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Ricky Vincent Pendleton, Petitioner**

**vs) No. 12-0653** (Berkeley County 10-C-670)

**David Ballard, Warden,**
**Mount Olive Correctional Complex,**
**Respondent**

**FILED**

**May 24, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioner Ricky Vincent Pendleton, by counsel Nicholas Forrest Colvin, appeals the April 26, 2012 order of the Circuit Court of Berkeley County denying his petition for writ of habeas corpus. Respondent Ballard, by counsel Cheryl K. Saville, has filed a response and a supplemental appendix.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 22, 1996, petitioner was indicted on the following four felony counts: kidnapping, malicious wounding, grand larceny, and aggravated robbery. These charges stemmed from an incident in which petitioner and an accomplice beat Ryan Frankenberry and robbed him of his wallet and vehicle. The beating was so severe that the victim required multiple surgeries to correct complications from his injuries, including the insertion of numerous titanium plates and screws in the victim's facial bones. Following a jury trial, petitioner was found guilty on all counts, and the jury recommended mercy in regard to his conviction for kidnapping. Petitioner was thereafter sentenced to life imprisonment with mercy for his kidnapping conviction, a term of incarceration of two to ten years for his conviction of malicious wounding, a period of incarceration of one to ten years for his conviction of grand larceny, and a term of incarceration of sixty years for his conviction of aggravated robbery. These sentences were ordered to run consecutively to one another and consecutively to a prior federal sentence. Petitioner appealed his convictions to this Court, which refused the same.

In October of 2003, with the assistance of counsel, petitioner filed a petition for writ of habeas corpus in the circuit court. This petition was dismissed because petitioner was, at the time, serving his federal prison sentence and was, therefore, not under the circuit court's jurisdiction in regard to habeas relief. On March 1, 2010, petitioner filed another petition for writ of habeas corpus. After being appointed counsel, an amended petition was filed. Thereafter, petitioner filed two more petitions for habeas relief, and the circuit court consolidated all outstanding petitions

1

under one case number, 10-C-670. Because the petitions contained material differences, the circuit court dismissed them all and granted petitioner leave to file a single amended petition. On April 27, 2011, with the assistance of counsel, petitioner filed his amended petition for writ of habeas corpus. On April 26, 2012, without holding an omnibus hearing, the circuit court issued an order denying the petition.

On appeal, petitioner alleges that the circuit court erred in failing to hold an omnibus evidentiary hearing in regard to his petition. According to petitioner, he has been denied due process by the circuit court's summary denial of his petition for writ of habeas corpus. Petitioner argues that, while he raised multiple grounds in his petition, the main focus was on the ineffectiveness of his trial counsel, Keith Wheaton. According to petitioner, his attorney was disbarred following his representation of petitioner. Petitioner cites to *Lawyer Disciplinary Board v. Wheaton*, 216 W.Va. 673, 610 S.E.2d 8 (2004), to argue that counsel's serious errors in judgment and misconduct spanned the time frame during which he represented petitioner. As such, petitioner argues this is prima facie evidence of ineffectiveness and that the circuit court erred in failing to fully develop his claim of ineffective assistance in an omnibus hearing.

This Court has previously held that

[i]n reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006). Further, West Virginia Code § 53-4A-7(a) states, in relevant part, that

[i]f the petition [for writ of habeas corpus], affidavits, exhibits, records and other documentary evidence attached thereto . . . show to the satisfaction of the court that the petitioner is entitled to no relief, or that the contention or contentions and grounds (in fact or law) advanced have been previously and finally adjudicated or waived, the court shall enter an order denying the relief sought.

After careful consideration of the parties' arguments, this Court concludes that the circuit court did not abuse its discretion in denying the petition for writ of habeas corpus. Having reviewed the circuit court's "Final Order Denying Amended Petition" entered on April 26, 2012, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignment of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we find no error in the decision of the circuit court and its April 26, 2012 order denying the petition for writ of habeas corpus is affirmed.

Affirmed.

**ISSUED:**  May 24, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

12-0653
N Colvin 2nd
Review

IN THE CIRCUIT COURT OF BERKELEY COUNTY, WEST VIRGINIA
Division II

STATE ex rel. RICKY VINCENT PENDLETON,

    Petitioner,

v.

                                          CIVIL CASE NO. 10-C-670
                                          Underlying Criminal Action
                                          Numbers: 96-F-103
                                          JUDGE WILKES

DAVID BALLARD, Warden,
Mount Olive Correctional complex,

    Respondent.

## FINAL ORDER DENYING AMENDED PETITION

This matter came before the Court this ___26___ day of April 2012, pursuant to

Petitioner Ricky V. Pendleton's Petition for Post-Conviction Habeas Corpus. The Court has

examined and considered the Petition, by counsel, Nicholas F. Colvin; the Respondent's Answer

and Motion to Dismiss, by counsel, Cheryl K. Saville, Assistant Prosecuting Attorney; the

parties' respective memoranda of law; and the pertinent legal authorities. As a result of these

deliberations and for the reasons set forth herein, the Court concludes that the Petition must be

**DENIED.**

### Procedural Background

1. On May 22, 2006, Petitioner was indicted on a four (4) count indictment for the

   following felonies: kidnapping, malicious wounding, grand larceny; and aggravated

   robbery.

2. On July 20, 1998, a pretrial hearing was held that continued into the morning of July 21,

   1998.

3. In the afternoon of July 21, 1998 Petitioners trial began and lasted until July 24, 1998. At the conclusion of the trial, a jury found Petitioner guilty of kidnapping with a recommendation of mercy, guilty of malicious wounding, guilty of grand larceny, and guilty of aggravated robbery.

4. Petitioner was subsequently sentenced to life imprisonment with mercy on the kidnapping conviction; 2 to 10 years imprisonment on the malicious wounding conviction; 1 to 10 years imprisonment on the grand larceny conviction; and a term of 60 years imprisonment on the aggravated robbery conviction; all of which were ordered to run consecutively to each other and consecutively to a prior United States Government sentence that the Petitioner had received.

5. The Petitioner made a direct appeal with the assistance of counsel claiming (1) that the length of sentence violated the cruel and unusual punishment protections of the Eighth Amendment to the United States Constitution and Article III Section 5 of the West Virginia Constitution, (2) error by allowing a juror who was an acquaintance of the victims grandfather to remain on the jury panel, and (3) error in admitting a tape recorded statement of the Petitioner into evidence. The Petition for Appeal was refused by the West Virginia Supreme Court of Appeals.

6. On October 1, 2003, Petitioner, with assistance of counsel, filed for Post-Conviction Habeas Corpus Relief. This Petition was dismissed because the Petitioner was currently still serving the United States Government sentence, and therefore, not under this Court's jurisdiction for Post-Conviction Habeas Relief.

7. On March 1, 2010, Petitioner filed a Petition for Writ of Habeas Corpus. Petitioner also moved for appointment of counsel. By order of the Court, Counsel was appointed and an Amended Petition was ordered, which was later filed.

8. On August 11, 2010, Petitioner filed a second Petition for Writ of Habeas Corpus.

9. Thereafter, the Court Ordered consolidation of these two cases under case number 10-C-670.

10. On August 20, 2010, Petitioner filed a third Petition for Writ of Habeas Corpus.

11. Thereafter, the Court ordered consolidation of this case under case number 10-C-670.

12. Finding that there were three Petitions which contained material differences which did not allow any one petition to be "sworn to affirmatively as true and correct," the Court dismissed the Petitions filed and granted leave to the Petitioner to file a single Amended Petition and *Losh* List.

13. On April 27, 2011, with the assistance of counsel, Petitioner filed the instant Amended Petition and *Losh* list under case number 10-C-670.

## Findings of Fact Relevant to Petitioner's Claims[1]

1. The indictment in this matter was reviewed by the Trial Court and found to be sufficient under Article III, Section 14 of the West Virginia Constitution, the West Virginia Rules of Criminal Procedure, and related authorities.

2. The indictment read, in pertinent part, as follows:

---

[1] These facts are found from the Court File for Berkeley County Case Number 96-F-103, the Transcripts, and the evidence introduced at trial.

Count II

"The Grand Jurors aforesaid upon their oaths aforesaid do further present that RICKY VINCENT PENDLETON, on the ___ day of November, 1995, in the said County of Berkeley and the State of West Virginia, did unlawfully, feloniously, and maliciously make an assault upon one Ryan Bealman Frankenberry, and with intent to cause bodily injury to Ryan Bealman Frankenberry, then and there to maim, disfigure, disable, or kill, in violation of Chapter 61, Article 2, Section 9(a) of the Code of West Virginia, against the peace and dignity of the State."

Count III

"The Grand Jurors aforesaid upon their oaths aforesaid do further present that RICKY VINCENT PENDLETON, on the ___ day of November, 1995, in the said County of Berkeley and the State of West Virginia, did unlawfully and feloniously steal, take and carry away; to-wit one red in color 1987 Porsche Z5, West Virginia License 811039, VIN WP0AA09Z4HN456863 with the intent to deprive the owner permanently thereof, the goods, effects and property of Ryan Bealman Frankenberry, in violation of Chapter 61, Article 3, Section 13(a), of the Code of West Virginia, against the peace and dignity of the State."

Count IV

"The Grand Jurors aforesaid upon their oaths aforesaid, do further present that RICKY VINCENT PENDLETON, on the ___ day of November, 1995, in the said County of Berkeley and State of West Virginia, did unlawfully, feloniously and did violently steal, take, and carry away the goods and property of Ryan Bealman Frankenberry, in violation of Chapter 61, Article 2, Section 12 of the Code of West Virginia, against the peace and dignity of the State."

3. Trial counsel in this matter was Keith L. Weaton (hereinafter Trial Counsel), who was appointed after a breakdown in the attorney-client relationship with the Public Defender's

Office. Upon being appointed, Trial Counsel requested, and was granted, a continuance in order to have time to better prepare for trial.

4. During the pre-trial stage, Trial Counsel filed several pre-trial motions, including:

   a. a motion to compel discovery,

   b. a motion for grand jury transcripts,

   c. a motion to dismiss the indictment, wherein Trial Counsel argued that the contents of the indictment were insufficient,

   d. several motions in limine, and

   e. a motion for a change in venue.

5. At some point, either at the beginning of the Pre-trial hearing, or just prior. The State made a motion for a continuance which was denied after objection by Petitioner.

6. At the Pre-Trial hearing the Court heard and Petitioner's Trial Counsel argued several issues, including:

   a. Petitioner's motion to dismiss the indictment which was denied after argument.

   b. Petitioner's motion in limine to prevent the state from using prior convictions which was agreed to by the parties after argument and discussion on the record.

   c. Petitioner's motion in limine to prevent the state from introducing photographs of the victim's injuries, which was denied after a review and argument.

   d. Petitioner's motion for a change of venue, which, after argument, was taken under advisement until the seating of the jury (at which time it was denied).

   e. Evidentiary issues regarding the Petitioner's recorded statement were taken up and the Court took evidence. Petitioner's Trial Counsel argued for suppression due to hearsay and that it was not voluntary because he was injured and possibly

on medication. The State also made arguments. The Court ruled that the statement was admissible.

7. It is clear from the discussions on record that while it is possible Trial Counsel could have used more time to prepare, Petitioner had insisted upon going forward with the trial as scheduled in July of 1998 (excepting his late request for continuance after adverse rulings, *see* ¶ 7, *infra*). The trial court had found Petitioner to be making decisions regarding his opposition to continuances knowingly and voluntarily.

8. Next, Petitioner moved to continue the trial just after the Pretrial hearing and immediately before seating the jury for the trial. The Court denied this motion after argument and objection by the state.

9. At the trial, the State called the following persons who gave testimonial evidence and through whom the State introduced exhibits into evidence:

   a. Ryan Frankenberry, the victim,

   b. Zachary Davis, a witness,

   c. Douglas Punt, a witness,

   d. John Stamat, a witness who found the victim on the road,

   e. Trooper Charles Porter, an investigating officer,

   f. Barbara Frankenberry, joint owner of the vehicle and who testified to its worth and condition,

   g. Ryan Hines, a nurse who cared for the victim,

   h. Dr. Martin Morse, a treating physician,

   i. Dr. Kenneth Banks, a treating physician,

   j. Dr. Gregory Allen, a treating physician,

k.  Robert Hartman, a nurse who cared for the victim,

l.  Trooper Jeffrey Phillips, an investigating officer,

m.  David Miller, a forensic DNA analyst, and

n.  Detective Marshall Cradock, an investigating officer.

10. The Petitioner called two witnesses who offered testimonial evidence: Trooper David Boober, an investigating officer; and Jacqueline Pendleton, mother of the Petitioner.

11. Petitioner's Trial Counsel cross-examined many of the State's witnesses and argued legal points including evidentiary issues and a motion for judgment of acquittal.

12. The trial by jury revealed following facts which constituted Petitioner's crime.

On or about November 28, 1995, the Petitioner and his co-defendant, David Gibson, asked the victim, Ryan Frankenberry, for a ride in his 1987 Porsche 924. Once on Fish Hatchery Road in Inwood, Berkeley County, West Virginia, they instructed the victim to pull off of the road where Mr. Gibson grabbed the victim in a headlock, pulling him out of the car through the passenger door. Petitioner and Mr. Gibson then proceeded to brutally beat the victim in the face and head, causing him to lose consciousness. Mr. Frankenberry was placed back into his vehicle and driven to an abandoned structure near Moler's Crossroad in Jefferson County, West Virginia. After being left there by Petitioner and Mr. Gibson, Mr. Frankenberry was able to get himself out of the structure and to the nearest road where a passing motorist saw him and assisted him by taking him to Jefferson Memorial Hospital.

Mr. Frankenberry was in and out of consciousness during this entire period. Because the Petitioner and Mr. Gibson had stolen Mr. Frankenberry's wallet containing his identification, cash, and credit cards as well as his 1987 Porsche 924, Mr. Frankenberry's identity had to be independently determined. Mr. Frankenberry was alert enough at the hospital to tell officials his name. Mr. Frankenberry was flown to Fairfax Hospital in Virginia after a brief period of evaluation and stabilization at Jefferson Memorial Hospital. His injuries were severe and have required multiple surgeries. They included multiple soft tissue injuries such as facial lacerations to his chin and around his

eyes and some intra-oral lacerations to his lips and a complex laceration of his tongue. Several of Mr. Frankenberry's teeth had been knocked out in the attack. Mr. Frankenberry also suffered fractures to his jaw, both cheek bones, and both sets of eye bones. In addition to multiple fractures, the bones in his face were also displaced, such that he had to have his remaining upper and lower teeth wired together as well as having approximately 10 titanium plates and approximately 38 titanium screws utilized to fixate his bones and features in the proper orientation. Reconstructive surgeons also used a material called cylastic to rebuild Mr. Frankenberry's orbits. Mr. Frankenberry experienced partial losses in eyesight and hearing.

Mr. Frankenberry's Porsche was recovered by the New Jersey State Police following a high-speed chase on the New Jersey turnpike wherein Mr. Gibson lost control of and crashed the vehicle, and Mr. Gibson and the Petitioner fled on foot from the wreckage. Mr. Gibson and the Petitioner then had a stand-off with New Jersey law enforcement, resulting in Mr. Gibson being fatally shot and the Petitioner being shot in the arm.

13. The jury was instructed by the Court with instructions which were based upon those submitted by the parties.

    a. The instruction given regarding aiding and abetting follows:

> The Court instructs the jury that a person who is the absolute perpetrator of a crime is a principal in the first degree. The Court further instructs the jury that a person who is actually or constructively present at the scene of a crime at the same time as the criminal act of the absolute perpetrator, who acts with shared criminal intent, contributing to the criminal act of the absolute perpetrator, is an aider and abettor and a principal in the second degree, and as such may be criminally liable for the criminal act as if he were the absolute perpetrator of the crime. Actual physical presence at the scene of the criminal act is not necessary where the aider and abettor was constructively present at a convenient distance at the time and place of the criminal act, acting in concert with the absolute perpetrator. However, you are cautioned that merely witnessing a crime without intervention therein does not make a person a party to its commission unless his interference was a duty, and his non-interference was designed by him and

operated as an encouragement to or protection of the absolute perpetrator of the criminal act.

b. The Petitioner was allowed to review the jury instructions and made no objection at trial to this instruction.

14. The jury returned a verdict as follows: (1) guilty of kidnapping with a recommendation of mercy; (2) guilty of malicious wounding; (3) guilty of grand larceny; and (4) guilty of aggravated robbery.

15. Petitioner, through Trial Counsel, made several post-trial motions. The Court heard argument on these at a separate hearing. The Court denied these motions.

16. At sentencing, Petitioner called two witnesses to testify: Jacqueline Pendleton, his mother, and Rev. Cornell Herbert, Assoc. Pastor at Zion Baptist Church in Charles Town, WV. The State presented a statement, written by the victim, and read by the victim's father. The Court then sentenced the Petitioner as laid out in Procedural Background, ¶ 3, *supra*.

## Conclusions of Law

This matter comes before the Court upon Petitioner's Petition for Writ of Habeas Corpus. After proper review the Court finds that the Petition must be DENIED and there is no need for an evidentiary hearing.

This Court has previously appointed counsel, who filed an amended petition, and subsequent to an initial review the Court has ordered the respondent to file an answer. At this point in the proceedings the Court is to review the relevant filings, affidavits, exhibits, records and other documentary evidence attached to the Petition to determine if any of Petitioner's

claims have merit and demand an evidentiary hearing to determine if the Writ should be granted. Otherwise, the Court must issue a final order denying the Petition.

The procedure surrounding petitions for writ of habeas corpus is "civil in character and shall under no circumstances be regarded as criminal proceedings or a criminal case." W. Va. Code § 53-4A-1(a); *State ex rel. Harrison v. Coiner*, 154 W. Va. 467 (1970). A habeas corpus proceeding is markedly different from a direct appeal or writ of error in that only errors involving constitutional violations shall be reviewed. *Syl. Pt. 2., Edwards v. Leverette*, 163 W. Va. 571 (1979).

> "If the petition, affidavits, exhibits, records and other documentary evidence attached thereto, or the return or other pleadings, or the record in the proceedings which resulted in the conviction and sentence . . . show to the satisfaction of the court that the petitioner is entitled to no relief, or that the contention or contentions and grounds (in fact or law) advanced have been previously and finally adjudicated or waived, the court shall enter an order denying the relief sought." W. Va. Code § 53-4A-7(a).

If the Court upon review of the petition, exhibits, affidavits, or other documentary evidence is satisfied that Petitioner is not entitled to relief the Court may deny a petition for writ of habeas corpus without an evidentiary hearing. *Syl. Pt. 1, Perdue v. Coiner*, 156 W. Va. 467 (1973); *State ex rel. Waldron v. Scott*, 222 W. Va. 122 (2008). Upon denying a petition for writ of habeas corpus the Court must make specific findings of fact and conclusions of law as to each contention raised by the Petitioner, and must also provide specific findings as to why an evidentiary hearing was unnecessary. *Syl. Pt. 1, State ex rel. Watson v. Hill*, 200 W. Va. 201 (1997); *Syl. Pt. 4., Markley v. Coleman*, 215 W. Va. 729 (2004); R. Hab. Corp. 9(a). On the other hand, if the Court finds "probable cause to believe that the petitioner may be entitled to some relief . . . the court shall promptly hold a hearing and/or take evidence on the contention or contentions and grounds (in fact or law) advanced . . . ." W. Va. Code § 53-4A-7(a).

When reviewing the merits of a petitioner's contention, the Court recognizes that "there is a strong presumption in favor of the regularity of court proceedings and the burden is on the person who alleges irregularity to show affirmatively that such irregularity existed." *Syl Pt. 2, State ex rel. Scott v. Boles*, 150 W. Va. 453 (1966). Furthermore, specificity is required in habeas pleadings, thus a mere recitation of a ground for relief without detailed factual support will not justify the issuance of a writ or the holding of a hearing. W. Va. Code § 53-4A-2; *Losh v. McKenzie*, 166 W. Va. 762, 771 (1981). "When a circuit court, in its discretion, chooses to dismiss a habeas corpus allegation because the petition does not provide adequate facts to allow the circuit court to make a 'fair adjudication of the matter,' the dismissal is without prejudice." *Markley v. Coleman*, 215 W. Va. 729, 734 (2004), *see* R. Hab. Corp. 4(c). However, rather than dismissing without prejudice the court may "summarily deny unsupported claims that are randomly selected from the list of grounds," laid out in *Losh v. McKenzie*. *Losh v. McKenzie*, 166 W. Va. 762, 771 (1981); *Markley v. Coleman*, 215 W. Va. 729, 733 (2004).

In addition to a review on the merits, the Court must determine if the contentions raised by the petitioner have been previously and finally adjudicated or waived. "West Virginia Code § 53-4A-1(b) (1981) states that an issue is 'previously and finally adjudicated' when, at some point, there has been 'a decision on the merits thereof after a full and fair hearing thereon' with the right to appeal such decision having been exhausted or waived, 'unless said decision upon the merits is clearly wrong.'" *Smith v. Hedrick*, 181 W. Va. 394, 395 (1989). But, a "rejection of a petition for appeal is not a decision on the merits precluding all future consideration on the issues raised therein . . ." *Syl. Pt. 1, Smith v. Hedrick*, 181 W. Va. 394 (1989). However, "there is a rebuttable presumption that petitioner intelligently and knowingly waived any contention or ground in fact or law relied on in support of his petition for habeas corpus which he could have

advanced on direct appeal but which he failed to so advance." *Syl. Pt. 1, Ford v. Coiner*, 156 W. Va. 362 (1972). In addition, any grounds not raised in the petition for habeas corpus are deemed waived. *Losh v. McKenzie*, 166 W. Va. 762 (1981).

As noted above, the direct appeal in this matter was refused and this is the first post-conviction habeas corpus proceeding for the Petitioner, so preclusion of claims based upon final adjudication is not at issue here. *See* W.Va. Code 53-4A-1(b); *Bowman v. Leverette*, 289 S.E.2d 435 (1982); *Smith v. Hedrick*, 382 S.E.2d 588 (1989); *Losh v. McKenzie*, 277 S.E.2d 606 (1981). As to the claims raised by the Petitioner, the Court is satisfied based on the pleadings and exhibits that the Petitioner is entitled to no relief, and below the Court will discuss the grounds for its denial of each contention and its determination that no evidentiary hearing is required in this matter.[2]

I.   Sufficiency of the Indictment

Petitioner claims the indictment was so deficient under Article III, §14 of the West Virginia Constitution, that it merits reversal of his conviction. This claim should be denied because it has been waived and lacks merit.

The Court initially notes that this claim has been waived. While this was argued by Trial Counsel, Petitioner failed to allege this as error in his direct appeal to the West Virginia Supreme Court of Appeals. Any ground that a habeas petitioner could have raised on direct appeal, but did not, is presumed waived. Syl. Pts. 1 & 2, *Ford v. Coiner*, 156 W. Va. 362, 196 S.E.2d 91

---

[2] The numbered sections below correspond with those in the Petitioner's Brief. They are in order insofar as they contain some legal or factual support. However, Sections IX – XX and XXIII – XXVIII are taken up in one section found at the end of this discussion.

(1972). So, the Petitioner is not entitled to an evidentiary hearing and the claim here must be denied on the grounds of waiver.

Notwithstanding, Petitioner's waiver of this claim, the Court finds that the claim has no merit. Petitioner claims that the indictment is so "utterly deficient" that the conviction should be reversed.[3] Petitioner's contention here is that Counts II and III lack specificity, that Count IV's use of "violently" to signify an aggravated robbery is inadequate, and that Count IV lacks the necessary elements because it does not contain the elements for larceny as an element of robbery.

"An indictment is sufficient under Article III, §14 of the West Virginia Constitution and W.Va.R.Crim. P. 7(c)(1) if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must defend; and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed twice in jeopardy." Syl. Pt. 6, *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999). "An indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations." Syl. Pt. 3, *Id.* "The requirements set forth in W.Va.R.Crim. P. 7 were designed to eliminate technicalities in criminal pleading and are to be construed to secure simplicity in procedure." Syl. Pt. 4, *Id.*

Petitioner's specificity arguments are without merit. The Court finds that the indictment clearly constitutes a plain and simple statement which meets the *Wallace* elements. 205 W.Va. 155. Further, Petitioner's arguments regarding Count IV are without merit. No particular form of words is required for an indictment so long as the accused is adequately informed of the nature of the charge. *See, Wallace*, 205 W.Va. 155. The Court finds that the use of the word "violently" as it appears in the indictment is sufficient to give notice of the charge of aggravated

_____

[3] The indictment is recited, in pertinent part, at Findings of Fact Relevant to Petitioner's Claims, 2, *supra.*

robbery. Also, Petitioner's argument that all of the elements for larceny must be included is without merit. Count IV of the indictment stated all of the elements of the offense it charged, and the Court finds that it is sufficient under the standard.

Accordingly, the Court finds the indictment legally sufficient. Therefore, Petitioner is not entitled to an evidentiary hearing and this claim must be denied.

II.    Assistance of Counsel

Petitioner claims that Trial Counsel was constitutionally deficient in six ways (referred to herein as contentions under this claim): failing to object to the indictment, failing to seek suppression of Petitioner's statement, failing to request a continuance to better prepare for trial, failing to call a material witness, failing to make requisite objections, and last Petitioner argues that Trial Counsel's license to practice law later being annulled is prima facie evidence of ineffectiveness. Each of these contentions and this claim should be denied because they individually, and as a whole, lack merit.

Both the Sixth Amendment to the Constitution of the United States and Article III, §14 of the Constitution of West Virginia assure not only the assistance of counsel in a criminal proceeding but that a defendant should receive "competent and effective assistance of counsel." *State ex rel. Strogen v. Trent,* 196 W. Va. 148, 152 (1996). In order to evaluate whether a defendant has received competent and effective assistance from their counsel West Virginia has adopted the two pronged test established by the United State Supreme Court in *Strickland v. Washington.* In order to prevail on a claim of ineffective assistance of counsel a petitioner under the two-prong test must show: "(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceedings would have been different." *Syl. Pt. 5, State v. Miller*, 194 W. Va. 3 (1995) (referencing *Strickland v. Washington*, 466 U.S. 668 (1984)) (hereinafter "*Strickland* test"). "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." *Syl. Pt. 6, State v. Miller*, 194 W. Va. 3 (1995); *Syl. Pt 2, State ex rel. Strogen v. Trent*, 196 W. Va. 148, 152 (1996). Under a consistent policy shown by the West Virginia Supreme Court of Appeals and the United States Supreme Court the analysis under ineffective assistance of counsel "must be highly deferential and prohibiting 'intensive scrutiny of counsel and rigid requirements for acceptable assistance.'" *State v. Miller*, 194 W. Va. 3, 16 (1995) (citing *Strickland v. Washington*, 466 U.S. 668, 689-90 (1984)). "Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syl. Pt. 21, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974). The Petitioner's six contentions will be addressed in turn.

Petitioner's first contention under this claim of ineffective assistance of counsel is that Trial Counsel failed to object to the contents of the indictment: this is simply untrue. Trial Counsel filed a written motion to dismiss the indictment, and he subsequently argued that motion before the Court at the pre-trial hearing held on July 20, 1998. *See* Findings of Fact Relevant to Petitioner's Claims ¶ 4(c), *supra.* Accordingly, this contention is untrue and therefore without

merit. So, Petitioner is not entitled to any relief, and the Court sees no need for an evidentiary hearing thereon.

Petitioner's second contention under this claim of ineffective assistance of counsel is that Trial Counsel failed to seek suppression of Petitioner's statement made to the New Jersey State Police: this is simply untrue. At the pretrial hearing, the Court heard testimony from the officer who took the statement and also listened to the two and a half hour statement. After which, Trial Counsel argued for suppression on two grounds: (1) that the statement was not a confession and was therefore not admissible based upon a hearsay exception and (2) that the statement of the Petitioner was not knowing or voluntary based upon his then-recent injury and possible medications that he had been given at the hospital. *See* Findings of Fact Relevant to Petitioner's Claims ¶ 5(f), *supra*. Accordingly, this contention is untrue and therefore without merit. So, Petitioner is not entitled to any relief, and the Court sees no need for an evidentiary hearing thereon.

Petitioner's third contention under this claim of ineffective assistance of counsel is that Trial Counsel failed to request a continuance to better prepare for trial: this is simply untrue. Trial Counsel first requested and was granted a continuance which moved the trial from June 9, 1998 to July 21, 1998. *See* Findings of Fact Relevant to Petitioner's Claims ¶ 3, *supra*. Further, at the Pre-trial hearing on July 21, 1998, it was clear that Petitioner had insisted on going forward on that day. *See* Findings of Fact Relevant to Petitioner's Claims ¶ 5, *supra*. After the Court made rulings in the pretrial and just before seating a jury, Trial Counsel informed the Court that Petitioner had told him that he now wants a continuance, and so Trial Counsel moved therefore. The Court denied the motion due, in part, to its lateness. *See* Findings of Fact Relevant to Petitioner's Claims ¶ 7, *supra*. Accordingly, this contention is untrue and therefore

without merit. So, Petitioner is not entitled to any relief, and the Court sees no need for an evidentiary hearing thereon.

Petitioner's fourth contention under this claim of ineffective assistance of counsel is that Trial Counsel failed to call a material witness on behalf of the Petitioner: this contention is without merit under the standard. In certain cases, an attorney's assistance may be presumed to be ineffective, such as where an attorney entirely fails to subject the prosecution's case to adversarial testing. *United States v. Cronic*, 466 U.S. 648, 659 (U.S. 1984). To establish a violation under *Cronic*, a petitioner must demonstrate that he or she suffered the equivalent of a complete absence of counsel. *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 325 (1995). Petitioner argues that he made Trial Counsel aware of Bernard Donaldson, who would testify that Petitioner told him earlier that Petitioner was planning on hearing to the Martinsburg Mall on the date of the commission on the crimes. However, the fact that the Petitioner may have told another person at an earlier time that he was going to go to the mall does nothing to negate the Petitioner's later intent to commit or actual commission of the crimes. Further, the evidence at trial in the case was quite overwhelming. *See* Findings of Fact Relevant to Petitioner's Claims ¶ 11, *supra*. With these two factors, it is impossible for the Court to find that either prong of the *Strickland* analysis has been met. *Syl. Pt. 5, State v. Miller*, 194 W. Va. 3. The Petitioner fails to show how Trial Counsel's decision was deficient under an objective standard of reasonableness and how it reasonably could have caused a different outcome. Nor can this be considered the situation laid out in *Legursky*. 195 W. Va. 314. This is exactly the type of decision which involves "strategy, tactics and arguable courses of action." Syl. Pt. 21, *State v. Thomas*, 157 W. Va. 640. So, it should be deemed effective. *Id.* Therefore, this contention is without merit.

Accordingly, Petitioner is not entitled to any relief, and the Court sees no need for an evidentiary hearing thereon.

Petitioner's fifth contention under this claim of ineffective assistance of counsel is that Trial Counsel failed to make requisite objections to preserve all relevant issues for appeal: this contention is partially untrue and wholly without merit. Petitioner claims here that Trial Counsel did not object to contents of the indictment, to the defective jury instructions, to issues of double jeopardy, nor to the suppression of Petitioner's statement. However, as noted above, Trial Counsel did in fact object to the contents of the indictment and to the admissibility of the Petitioner's statement. In fact, several evidentiary objections were made by Trial Counsel throughout the pre-trial hearing and the trial. Clearly Petitioner can meet neither prong of the *Strickland* analysis. *Syl. Pt. 5, State v. Miller*, 194 W. Va. 3. In fact, Petitioner's contention lacks any further specificity. It amounts to a "mere recitation" of a ground for relief "without detailed factual support," and so it "will not justify the issuance of a writ or the holding of a hearing." W. Va. Code § 53-4A-2; *Losh v. McKenzie*, 166 W. Va. 762, 771 (1981). Therefore, this contention is without merit. Accordingly, Petitioner is not entitled to any relief, and the Court sees no need for an evidentiary hearing thereon.

Petitioner's sixth contention under this claim of ineffective assistance of counsel is that there is prima facie evidence of ineffective assistance of counsel because Trial Counsel's license to practice law was later annulled.

In *Lawyer Disciplinary Bd. v. Wheaton*, 216 W.Va. 673, 610 S.E.2d 8 (2004), the W.Va. Supreme Court adopted the recommendations of the Lawyer Disciplinary Board (hereinafter "Board") and annulled Trial Counsel's license to practice law. In that case, the Court reviewed complaints which led to Trial Counsel's thirty-one violations of the Rules of Professional

Conduct, as found by the Board and not challenged by Trial Counsel on appeal of this ruling. Instead, Trial Counsel contested the sanction recommended by the Board.

It is concerning to the Court that Trial Counsel's violations of the Rules of Professional Conduct were during the same time period as he was handling this matter, and were so grievous as to warrant annulment of his license. However, looking at the totality of this situation, Petitioner's arguments are unpersuasive. Trial Counsel's violations which led to this annulment were all in connection with civil cases, none were for violations regarding his criminal case work. The Court finds this unrelated to Trial Counsel's performance at trial. Also, Petitioner's argument here is not supported by any facts regarding specifically what Trial Counsel did or failed to do, excepting those contentions already examined and found meritless by this Court, *supra*. Last, a review of the transcripts reveals that on its face Trial Counsel's performance appears more than adequate. Therefore, the Court finds this contention to be without merit. Accordingly, Petitioner is not entitled to any relief, and the Court sees no need for an evidentiary hearing thereon.

The Court finds that none of Petitioner's contentions under this claim of ineffective assistance of counsel to have merit. There is also clearly no cumulative effect entitling Petitioner to relief. In fact, at the close of sentencing, the trial court asked the Petitioner about having Trial Counsel appointed for his appeal, and the Petitioner indicated to the Court that Mr. Wheaton was satisfactory to him. For these reasons, the Court can find no cumulative effect; so, Petitioner is not entitled to any relief, and the Court sees no need for an evidentiary hearing thereon.

III. Suppression of Petitioner's Statement

Petitioner's claim here is that his waiver of his *Miranda* rights and his statement to the New Jersey Police was not knowing, intelligent and voluntary because he was receiving treatment at the time; so, they should have been suppressed in violation of his due process rights. This claim should be denied because it lacks merit.

This issue was previously adjudicated by the trial court prior to trial. In order to prevail on an issue previously adjudicated during the criminal proceeding, the petitioner must prove that the trial court's ruling is "clearly wrong". W. Va. Code § 53-4A-1(b).

It is well settled that before a custodial interrogation by the police a Defendant must be informed of and intelligently waive certain constitutional rights: known as the *Miranda* warnings. *See, Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, (1966); *State v. Randolph*, 179 W.Va. 546, 370 S.E.2d 741 (1988). Further, "[a] confession that has been found to be involuntary in the sense that it was not the product of the freewill of the defendant cannot be used by the State for any purpose at trial." Syl., *Randolph*, 179 W.Va. 546.

The record in this matter clearly reflects that the Petitioner was read and reminded of his *Miranda* rights and asked if his statement was voluntary repeatedly throughout the taking of his statement (including at least three sets of *Miranda* warnings and three confirmations of the voluntariness of Petitioner's statement). Further, the record and the recordings reflects that Petitioner was fully conscious and able to verbally answer questions. The Officer taking the statement also testified to Petitioner's clear mind and demeanor during the conversation. Just as the trial court found, the record plainly shows that Petitioner's statements given to the Police and his waiver of *Miranda* rights, were voluntary, knowingly, and intelligently given without threat, promise, or coercion.

Therefore, this contention is without merit. Accordingly, Petitioner is not entitled to any relief, and the Court sees no need for an evidentiary hearing thereon.

IV.   Sufficiency of the Evidence

Petitioner claims here that the evidence at trial was insufficient to sustain the verdicts by the jury. This claim should be denied because it has been waived and lacks merit.

The Court initially notes that this claim has been waived. The Petitioner failed to allege this as error in his direct appeal to the West Virginia Supreme Court of Appeals. Any ground that a habeas petitioner could have raised on direct appeal, but did not, is presumed waived. Syl. Pts. 1 & 2, *Ford v. Coiner*, 156 W. Va. 362, 196 S.E.2d 91 (1972). So, the Petitioner is not entitled to an evidentiary hearing and the claim here must be denied on the grounds of waiver.

Notwithstanding, Petitioner's waiver of this claim, the Court finds that the claim has no merit.

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. Pt. 1, *State v. Miller*, 204 W. Va. 374, 513 S.E.2d 147 (1998);

Under this standard, Petitioner's claim clearly has no merit. It is apparent from the court file, evidence, Petitioner's statement, and the transcripts that the evidence in this case was quite

overwhelming. *See generally*, Findings of Fact Relevant to Petitioner's Claims, *supra*. The evidence was plainly sufficient to support the verdicts.

Therefore, the Court finds this contention to be without merit. Accordingly, Petitioner is not entitled to any relief, and the Court sees no need for an evidentiary hearing thereon.

## V. The Kidnapping and Armed Robbery Convictions

Petitioner's claim here is that the Kidnapping was "incidental" to the Petitioner's acts, *see* Syl. Pt. 2, *State v. Miller*, 204 W. Va. 37, and that the State did not prove the intent element of the crime of aggravated robbery. This claim should be denied because it has been waived and lacks merit.

The Court initially notes that this claim has been waived. The Petitioner failed to allege this as error in his direct appeal to the West Virginia Supreme Court of Appeals. Any ground that a habeas petitioner could have raised on direct appeal, but did not, is presumed waived. Syl. Pts. 1 & 2, *Ford v. Coiner*, 156 W. Va. 362, 196 S.E.2d 91 (1972). So, the Petitioner is not entitled to an evidentiary hearing and the claim here must be denied on the grounds of waiver.

Notwithstanding, Petitioner's waiver of this claim, the Court finds that the claim has no merit. As noted *supra*, the evidence is quite overwhelming in this matter and with this specific claim there was clearly enough evidence to allow the jury to find intent.

Also, the acts constituting Kidnapping were not incidental.

> The general rule is that a kidnapping has not been committed when it is incidental to another crime. In deciding whether the acts that technically constitute kidnapping were incidental to another crime, courts examine the length of time the victim was held or moved, the distance the victim was forced to move, the location and

environment of the place the victim was detained, and the exposure of the victim to an increased risk of harm."

Syl. Pt. 2, *State v. Miller*, 204 W. Va. 37.

In this case, it is clear that the Petitioner and Mr. Gibson could have easily left Mr. Frankenberry, (beaten, bloodied, and unconscious) on Fish Hatchery Road and taken his car from there. Instead, they chose to load the victim back into his own vehicle with the Petitioner sitting on his body, restraining him from possible movement, drive him approximately 20 miles east to a neighboring county, and leave him helpless and severely injured in an abandoned, condemned structure. This cannot be considered incidential within the meaning of *Miller*. 204 W. Va. 37. It is constitutes a kidnapping. *E.g.*, *State v. Kitchen*, 207 W.Va. 724, 536 S.E.2d 488 (2000).

Therefore, the Court finds this contention to be without merit. Accordingly, Petitioner is not entitled to any relief, and the Court sees no need for an evidentiary hearing thereon.

VI.   Jury Instructions

Petitioner's claim here is that the jury was incorrectly instructed on the requirements of aiding and abetting in violation of his due process rights. *See* Findings of Fact Relevant to Petitioner's Claims ¶ 12 (a), (b). This claim should be denied because it has been waived and lacks merit.

The Court initially notes that this claim has been waived. The Petitioner failed to object to this instruction in any way, and further failed to allege this as error in his direct appeal to the West Virginia Supreme Court of Appeals. Any ground that a habeas petitioner could have raised on direct appeal, but did not, is presumed waived. Syl. Pts. 1 & 2, *Ford v. Coiner*, 156 W. Va.

362, 196 S.E.2d 91 (1972). So, the Petitioner is not entitled to an evidentiary hearing and the claim here must be denied on the grounds of waiver.

Notwithstanding, Petitioner's waiver of this claim, the Court finds that the claim has no merit. An aider and abetter "must in some sort associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seeks by his actions to make it succeed." *State v. Harper*, 179 W.Va. 24, 29, 365 S.E.2d 69, 74 (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2nd Cir. 1938)). Further, "in order for a defendant to be convicted as an aider and abettor, the prosecution must demonstrate that he or she shared the criminal intent of the principal in the first degree." *Id.* Looking to the instruction, *see* Findings of Fact Relevant to Petitioner's Claims ¶ 12 (a), it appears adequate. It contains language similar to that of *Harper*, 179 W.Va. 24, as follows: (1) "acts with shared criminal intent, contributing to the criminal act," (2) "acting in concert with the absolute perpetrator," and (3) "designed by him and operated as an encouragement to or protection of the absolute perpetrator." The instruction further contains a cautionary clause reminding the jurors that merely witnessing the crime without intervening does not- on its own- make that person a party to the crime. The Court finds this instruction appropriate, as Petitioner and his counsels did at all previous stages.

Therefore, the Court finds this contention to be without merit. Accordingly, Petitioner is not entitled to any relief, and the Court sees no need for an evidentiary hearing thereon.

VII. Excessiveness of Sentence

Petitioner claims that he received a more severe sentence than expected and that it was unconstitutionally excessive.[4] This claim should be denied because it lacks merit.

---

[4] Interesting, Petitioner also specifically waived the ground of "severer sentence than expected" on his *Losh* list.

Both the Eighth Amendment to the United States Constitution and Article III Section 5 of the West Virginia Constitution protect against cruel and unusual punishment.

> Punishment may be constitutionally impermissible, although not cruel and unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense." *Syl. Pt. 5, State v. Cooper*, 172 W. Va. 266 (1983).

However, "Sentences imposed by the trial court, if within statutory limits and if not based on some impermissible factor, are not subject to appellate review." *Syl. Pt. 6, State v. Woodson*, 222 W. Va. 607 (2008).

The Petitioner's sentence was within the statutory limits. There is no contention here that the Court considered impermissible factors when issuing the sentence. Since the sentence is within the statutory limits there is no merit to a challenge to the sentence. Further, Aggravated Robbery and Kidnapping are very serious crimes of violence. These acts pose a high risk of harm to the victim, and therefore, often warrant larger sentences as displayed by the broad discretion granted to circuit courts by the legislature. *See, State v. King*, 205 W.Va. 422, 518 S.E.2d 663 (1999). Petitioner's reference to the fact that a 2nd degree murder sentence or rape sentence would be less than his instant sentence is misplaced because the instant sentence is for multiple crimes of violence and not just one. This permissibly creates a longer total sentence. The sentence given for the type of crimes committed as well as the specific manner of these crimes does not "shock the conscience." *Cooper*, 172 W. Va. 266.

Therefore, the Court finds this contention to be without merit. Accordingly, Petitioner is not entitled to any relief, and the Court sees no need for an evidentiary hearing thereon.

## VIII. The Cumulative Effect of Alleged Errors

Petitioner's argument here is that if all of the errors would alone be harmless, their cumulative effect creates a due process violation. *See* Syl. Pt. 5, *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972). This claim, however, must be denied. Herein the Court has found no merit in each of Petitioner's arguments that there was constitutional error. This is fatal to Petitioner's argument of cumulative error.

Therefore, the Court finds this contention to be without merit. Accordingly, Petitioner is not entitled to any relief, and the Court sees no need for an evidentiary hearing thereon.

## IX – XX and XXIII – XXVIII.[5] Petitioner's Claims Which Lack Any Factual or Legal Support Must Be Denied.

In these sections Petitioner merely makes a one sentence argument in the form of a subheading. "Assignment XXI" and "Assignment XXII" each offer only a couple extra sentences and no factual support of any kind. The rest of these subheadings offer no legal or factual support of any kind beyond the sentence or phrase which is the subheading. In any case, all of these claims amount to a "mere recitation of a ground for relief without detailed factual support" and therefore, "will not justify the issuance of a writ or the holding of a hearing." W. Va. Code § 53-4A-2; *Losh v. McKenzie*, 166 W. Va. 762, 771 (1981). The Court may "summarily deny unsupported claims that are randomly selected from the list of grounds," laid out in *Losh v. McKenzie. Losh v. McKenzie*, 166 W. Va. 762, 771 (1981); *Markley v. Coleman*, 215 W. Va.

---

[5] The Petition contains two "Assignments" or subheadings numbered X and two numbered XX. The analysis in this section of the Order applies to both sets of these subheadings.

739. 733 (2004). Without any support, the remaining claims from the *Losh* list are hereby SUMMARILY DENIED.

Grounds Left Un-addressed

Petitioner completed a Checklist of Grounds for Post-Conviction Habeas Corpus Relief which provides the grounds listed in *Losh v. McKenzie* and advises the Petitioner to initial the grounds he specifically waives and to raise all other grounds in his amended petition. Petitioner specifically waived the following grounds: statute under which conviction obtained is unconstitutional, involuntary guilty plea, mental competency at the time of the crime, mental competency at the time of trial cognizable even if not asserted at proper time or if resolution not adequate, incapacity to stand trial due to drug use, language barrier to understanding the proceedings, denial of counsel, failure of counsel to take an appeal, state's knowing use of perjured testimony, falsification of transcript by prosecutor, information in presentence report erroneous, irregularities in arrest, excessiveness or denial of bail, no preliminary hearing, illegal detention prior to arraignment, failure to provide copy of indictment to defendant, lack of full public hearing, refusal to turn over witness notes after witness has testified, claim of incompetence at time of offense as opposed to time of trial, claims of prejudicial statements by prosecutor, acquittal of co-defendant on same charge, defendant's absence from part of the proceedings, improper communications between prosecutor or witnesses and jury, question of actual guilt upon an acceptable guilty plea, severer sentence than expected, mistaken advice of counsel as to parole or probation eligibility, and amount of time served on sentence and/or credit for time served. Petitioner did not waive all other claims and raised a good portion of those claims in the Petition, which have been addressed above. As for the claims not waived but not

raised in the Petition, the Court may "summarily deny unsupported claims that are randomly selected from the list of grounds," laid out in *Losh v. McKenzie*. *Losh v. McKenzie*, 166 W. Va. 762, 771 (1981); *Markley v. Coleman*, 215 W. Va. 729, 733 (2004). Without any support, the remaining claims from the *Losh* list are hereby SUMMARILY DENIED.

Accordingly, the Court, upon this Final Order, DENIES Petitioner's Amended Petition for Writ of Habeas Corpus, for the reasons set forth herein. The Court notes the objections and exceptions of the parties to any adverse ruling herein.

Therefore, it is hereby ADJUGDED and ORDERED that the Court finds no need for an evidentiary hearing in this matter and the Petitioner Ricky Vincent Pendleton's Amended Petition for Writ of Habeas Corpus is DENIED.

The Court directs the Circuit Clerk to distribute attested copies of this order to the following counsels of record:

**Counsel for Petitioner:**
Nicholas Colvin, Esq.
P.O. Box 1720
Martinsburg, WV 25401

**Counsel for Respondent:**
Christopher C. Quasebarth, Esq.
Chief Deputy Prosecuting Attorney
380 W. South Street, Suite 1100
Martinsburg, WV 25401

A TRUE COPY
ATTEST
Virginia M. Sine
Clerk Circuit Court
By: _____
Deputy Clerk

_____
CHRISTOPHER C. WILKES, JUDGE
TWENTY-THIRD JUDICIAL CIRCUIT
BERKELEY COUNTY, WEST VIRGINIA